And at this time, we'll hear Jobe v. Whitaker. Thanks. Good morning. Good morning, Your Honor. Ari Holtzblatt for Petitioner Mr. Jobe. Had Mr. Jobe remained in the United States, he would not have been deportable. That is because Congress believed that lawful permanent residents with only a single minor marijuana possession conviction do not pose a significant threat to society or U.S. citizens and so categorically exempted them from deportation. But because, and only because, Mr. Jobe traveled abroad to visit his family, he was stripped of his status and banished from this country. Mr. Jobe's innocent, casual, and brief trip did not meaningfully interrupt his permanent residence. Expelling Mr. Jobe solely because he took such a trip subjected him to precisely the sort of meaningless and irrational hazards that Judge Hand cautioned against in DePasquale, that the Supreme Court deemed irrational and fluty, and that this Court struck down on equal protection grounds in Francis and Blake. You described it as innocent, casual, and brief, and I guess we can take your word for that, but isn't the point perhaps that Congress didn't want to have to do an inquiry into each trip to figure out which ones were casual, innocent, and brief, and which ones were deliberate, not casual, and for some illicit purpose? I mean, wouldn't that be a legitimate reason why Congress might choose to treat traveling folks differently than folks who stay home? Your Honor, I believe other provisions of 1101A13C show the opposite. Every other provision at issue here that neighbors, the one that Mr. Jobe challenges, focuses on travel-related reasons for assessing whether a traveling LPR has meaningfully interrupted his permanent residence. So one focuses on whether it was 180 days or less. That's a durational inquiry tied to the briefness question. Others focus on whether the point of the travel was to engage in illegal conduct. So Congress has shown, I think, the opposite in this very provision. It believed that it was appropriate to ask whether an LPR's travel meaningfully interrupted his permanent residence, because Congress, as the Supreme Court did in Flutie, recognized that the weighty interest that an LPR has obtained in establishing permanent residence cannot be broken simply because the LPR has taken a brief or casual or innocent trip. But your point, I think, is that there's no rational basis for this statute, right? You're asking us to strike it down because Congress couldn't have meant or if they did, it was impermissible for them to have created this restriction, right? That's correct, Your Honor. And so I guess all your adversary has to do is come up with a rational reason, and that's enough, right? Your Honor, the reason has to be conceivably or reasonably the basis that Congress, the relevant decision-maker, was relying upon. And here, the neighboring provisions of the statute indicate that Congress itself understood that travel that is durationally brief and where the travel itself is innocent does not meaningfully interrupt a lawful permanent residence. And I think the Supreme Court's judgment in Flutie speaks directly to this question. The language that the Supreme Court used in Flutie bears directly here. As Flutie explained, quote, no rational policy could justify banishing an LPR based solely on innocent casual and brief travel. But Flutie was then overruled by an act of Congress, right? And did they have to give their reasons? Did they have to sort of submit a statement of reasons to the court to get it through? Again, Your Honor, Congress does not have to provide a set of reasons. But even hypothetical reasons have to both A, be rational, and B, have to conceivably or reasonably be the decision of the relevant government decision-maker here at Congress. And again, Your Honor, although the statutory holding of Flutie was overruled, the reasoning of both Judge Hand's decision for this court in DePasquale and the Supreme Court's reasoning in Flutie bears directly on the question. And the reasons given in Flutie and in DePasquale were that this sort of a trip does not meaningfully interrupt the permanent residence of an LPR. The Supreme Court said in Flutie that such a trip bears, quote, little rational relation to the punitive consequences of subsequent excludability. And again, Your Honor, the other provisions that are at issue here are directly tied to travel. So I think there is nothing about the travel itself that meaningfully interrupted the LPRs. What do you do with Judge Walker's opinion in the Korea case? It's 1990, but that's within living memory. And it says it's a basic principle of immigration law, with limited exceptions not relevant here, that a resident alien who leaves this country and attempts to enter the United States on his or her return is subject to all current exclusionary rules. Yes, Your Honor. And in footnote 9 of that opinion, Judge Correa recognized a, quote, exception to that rule, which was the Flutie doctrine. And, in fact, the facts— Which seems to have been overruled. I think we've held that it was overruled. Congress has repealed that statutory provision. That was the holding of this court in Gomez-Heredia. But it did not repeal the reasoning or judgment of either Judge Hand in DePasquale or the Supreme Court in Flutie. And, in fact, Correa illustrates the very sort of travel that meaningfully interrupts a permanent residence. In that case, the LPR was smuggling a kilo of cocaine worth a million dollars in her luggage into the United States. It's exactly in that circumstance that travel meaningfully interrupts permanent residence. But where the travel itself is brief and the purpose of the travel is casual, as here where Mr. Job was simply traveling to visit his family, which is an ordinary incidence of permanent residence, there's nothing about the travel itself that meaningfully interrupted his permanent residence. Now, Your Honor, I want to address the various marijuana— very briefly, the various marijuana explanations that the government has offered. Here, the disparity, again, is between travelers and non-travelers, not between marijuana offenders and non-offenders. And so there must be a travel-based justification. I think Your Honor's questions illustrate that. And, as I've said, the judgment of the Supreme Court in Flutie and of DePasquale from this court illustrates that there is no travel-based justification. I'll reserve the remainder of my time. Done. Good morning. May it please the Court. Laura Merrildy for the Attorney General of the United States. This case involves a straightforward application of a statute enacted by Congress, which this Court very recently reaffirmed applies to an LPR, a lawful permanent resident who has left the country and comes back, but tries to come back in, but has a drug offense. Mr. Job's situation fell squarely within the statute. And the Flutie doctrine has no application here at all, aside from the fact that there's no finding of innocence casual and brief in his case, because there didn't need to be. It's very clear that that doctrine does not apply. And, in fact, when Congress passed ERIRA, excuse me, let me step back for a moment, the Flutie doctrine arose because of the statute in place at that time. And it was at that time LPRs typically had to seek admission if they came back to the United States, except under narrow circumstances. Now, after the passage of ERIRA, the law that applies to Mr. Job, LPRs presumptively can come back without having to formally seek admission, except under the six circumstances set forth in 1101 A.C. And one of them clearly applies to Mr. Job, because he had committed an offense that was listed under the grounds for inadmissibility under 1182. Their argument is that an LPR who had committed the same minor offense would not be deported. And so it's irrational to say that just because he made a brief, innocuous trip outside the country should subject him to deportation. And that's the difference. And that, we said, it's irrational to distinguish between two categories of LPR narcotics offenders on the basis of a brief visit out of the country. So, do you agree with that statement? No, Your Honor. In the Francis case, which I think is what Your Honor is alluding to, that case concerned a lawful permanent resident who had already been ordered deported. And his complaint was, I want to be available for this form of relief under now repeal 212C. And what troubled the court in Francis was that although the Board of Immigration's Appeals application of that and allowing persons, both deportees as well as excludees, to apply for it in the past, although that what was keeping Mr. Francis from being eligible for it was his failure to travel. And that is what troubled the court there. It said, I think, something along the lines of reason and fairness suggests that someone who has not left the country should get at least as much consideration as someone who does. And in this, Mr. Job's case is very different from that. Because what Mr. Job is saying is, I want different grounds to apply to me of deportability. In other words, this is not, he's saying I should not have been subject to grounds of inadmissibility at all. This case involves a straightforward application of a statute that says that someone in his circumstances must seek admission. But his argument is that if he hadn't traveled, he wouldn't have been deported, notwithstanding the conviction. And because he traveled, he had this brief trip, he's going to lose his green card, which is a significant interest, probably out of ignorance. If he had known that this was going to happen, it's unlikely he would have traveled. But let's put that aside. He's saying it's irrational. You're going to let people stay in the country who possessed whatever it is, under 40 grams of marijuana. And just because I made this brief trip out of the country, you're not going to let me back in and I'm going to lose the green card. And he's saying that that's irrational. What makes it rational? In addition to the reasons we stated in our brief for things that are— I'm sorry, I'm asking you. Forget your brief. What makes it rational? Well, Your Honor, it's rational for Congress to have decided when they enacted ERIRA in 1996, that they would have certain grounds that make you inadmissible and certain grounds that make you deportable. And admissibility, by its terms, involves persons who've left the country. And it was perfectly rational, in our view, for Congress to decide that offenses under 1182, which include controlled substance offenses— People who have green cards can leave the country and come back. Yes, Your Honor. People who have green cards could stay in the country without being deported, who commit minor offenses of this kind. So he's in a category where he could leave the country, but he was not admitted back for a reason that would not have resulted in him being kicked out to begin with. That sounds sort of irrational to me. Well, without diverting too far, DHS would have to decide whether he would meet the grounds of deportability if he had not left. But the government's position is that it is perfectly rational for Congress to decide that certain people who fall into certain grounds need to apply for admissibility. And he did. He had a hearing. And he was considered for the reliefs that might potentially be available to someone in his position. Is a waiver available for this individual? A waiver—he was considered for a waiver under 212H, Your Honor. Yes, and he didn't meet that for two reasons, as set out in—and I'm happy to summarize them. But the reasons were that the offense had not occurred more than 15 years prior, and he also had no—what is known as a qualifying relative in the United States. So he wasn't available for consideration for 212H relief. He was considered for it. He was found not eligible for it, Your Honor. And also for cancellation of removal, a different form of relief, he was not eligible for that because his offense occurred in 2009, within seven years of his coming to the United States. And as this Court has held in the Gomez-Heredia case, that's just the straightforward application of the stop-time rule. So he was considered for both reliefs for which he might have been eligible. And Francis, which— No, I was just wondering whether that is an answer to Judge Corman's or a proportional answer to Judge Corman's question about— Yes, that's— —the rationality because if there's a safety valve of some kind, it has some bearing. Correct, and for the same reason, a different aspect of the same point. He was not just banished. He had to—he had—there were reliefs potentially available to him. And he did not qualify for them. And as the Plasencia case teaches and the Chu case emphasized— Yes, but if a lawful permanent resident without any minor conviction left the country, he would just be readmitted without going through all of that. So it gets down—if we were writing an opinion that said the rational basis for this distinction is, how would you complete the sentence? Control of the borders. Concern about—perhaps about drug offenders being able to freely come back in, just like those who have not committed any offenses under the 1101A13. The rational basis—the other rational basis we identified in our brief, that it was perfectly rational for Congress perhaps to have decided if you've had a single offense of possession of 30 grams of marijuana or less for personal use, it's not—I'm going to put this somewhat crudely—it's not worth it. It's not worth the resources necessarily to pursue you, but it may have decided for those who are traveling outside of the country. We're concerned about having controlled substance offenders be able to freely come back without applying for admission. Oh, that's true, but we're dealing with a particular category of controlled substance and an amount for personal use. It's not—I happen to think that Congress just wasn't thinking about it. That doesn't matter. But I was just wondering how we would complete the sentence that I asked you, and you answered the question. I may have made it a very long sentence, Your Honor. Because you have to do a lot to find the rational basis. Congress clearly thought about it. They enacted a statute with different grounds for inadmissibility and deportability. And in the cases that have been—have construed the previous regime where it was excludability versus deportability, even—the Court's indulgence. I don't think there's a problem with putting the person in the right form of proceedings. I don't think that's been found by this Court, any equal protection violation, nor should there be an equal protection concern about applying the correct rules, those for inadmissibility versus deportability. Does it matter that he has a green card, which essentially gives him an interest, a protectable liberty interest in remaining in the United States and also a pathway to citizenship? Does that in any way affect the standard by which we should judge this distinction? Your Honor, I think that the case law shows that he was entitled to procedural due process, and he received that, and I—frankly, I'm not sure he was eligible to adjust his status at the time that these events occurred. Thank you. Thank you, Your Honor. We'll hear rebuttal. Judge Corman, it does matter he had a weighty interest in his permanent residence in the United States that attached to his green card. I want to address the waiver question. Had Mr. Job remained in the United States, he would not have needed a waiver because he would have qualified for the categorical exception for small amounts of marijuana. That is exactly the kind of disparate treatment that this Court rejected under equal protection grounds in Francis. In Francis, there was also a waiver argument made like the one that the government has offered here. Isn't there something of a distinction in the sense that your client, having left the country, upon entry exposed himself to scrutiny to determine whether he meets the requirements for entry? I mean, the controlled substance violation, he was also convicted of a violation of an order of protection, disorderly conduct, sale of illegal tapes, whatever that is. But it was only the fact that it was a controlled substance that triggered that extra scrutiny. Your Honor, that's right. The government has only charged him with inadmissibility based on the controlled substance offense. He exposed himself when he reentered the country to consideration of whether he qualifies for entry. Your Honor, the question then is whether his travel is the sort of rational or meaningful reason to separate someone who has established the ties of permanent residence from this country. And what the court in Flutie said, and what this court said in DePasquale, is that that sort of travel is not a meaningful interruption of an LPR, a lawful permanent residence relationship. Now, I do want to focus on the particular offense. This is the only drug crime. It is the only drug crime that has different grounds for excludability and deportability. Minor drug possession of marijuana for personal use of less than 30 grams. It defies logic to think that minor marijuana possession alone among drug crimes requires some kind of special travel-based treatment when everything else does not. Now, Judge- Everything else meaning felonies? You mean things that would get you deported immediately, even if you went LPR? Is that what you're comparing it to? Misdemeanor drug crimes, felony drug crimes, possession drug crimes, any drug crime does not have this differential treatment. But they have a differential treatment at the front end, right? They affect your ability to stay in the country, period, whether you travel or not, right? Yes, Your Honor. The point is that Congress has made a judgment here that minor marijuana offenders do not pose a significant threat to society or the United States, and that is why they have made them not deportable. The question is- The issue is whether the ones who stroll should be treated differently than those who stay. And is it irrational to think that the strollers might be up to no good, and we don't want to have to figure all this out at the border, and so that's the rule. Is that irrational? Your indulgence to answer the question. My homies, go ahead. Your Honor, yes, it is irrational unless there's something about the travel itself that meaningfully interrupts the permanent residence. And so, Your Honor, as to your question before, Congress addressed the concerns about travel and the concerns about cost of assessing travel with other provisions of 1101A13C. It said 180 days or less, we can assess that at the border, and that's the kind of trip that interrupts permanent residence. Illegal conduct while traveling, that's the kind of travel that impacts permanent residence. This court in DePasquale, Judge Hand for this court, confronted exactly this question. Someone had taken a trip from Buffalo to Detroit in a sleeper car overnight, and he described the significance of that sort of trip as a meaningless and irrational hazard. And he said it is more important that we should not subject the hospitality of this country to meaningless and irrational hazards once it is granted. This is exactly the sort of meaningless and irrational hazard that Mr. Jobe faced. Why isn't this just a painful irony? I mean, you can have two people who are felons in possession of a gun. They're both driving. One of them has a burnt-out taillight. That one gets stopped. That one goes to jail for a long time. The other one drives on. This is not a distinction in how you treat people. This is simply a distinction between whether somebody exposes themselves to inquiry or to inspection and somebody who doesn't. And why isn't that at least analogous to your case, not technically, but in terms of a rational consideration? Two answers, Your Honor. In the example that Your Honor just gave, Congress would not have made a substantive and normative judgment that one person is not a criminal and the other one is. And so what has happened here is that Congress has made a substantive judgment about how two different identical classes of LPRs who differ only because they have done something that the Supreme Court and this Court have multiple times designated as an irrelevancy. He has taken a brief, innocent, and casual trip. But you can't just stop every car to find out whether it's being driven by a felon who happens to have a gun on him or her. But you can check this out if somebody has a burnt-out taillight, which seems to me much more trivial than a conviction for selling a control for possessing a controlled substance. Your Honor, and if the government decided to flip a coin or to throw darts to decide who as a felon of possession was going to be convicted of a crime and who not, this Court would in a moment strike that down. There has to be some rational connection to the conduct that is triggering the consequences of the law and not. And here this Court and the Supreme Court have multiple times determined that travel is not such a rational consequence. It's not the sort of thing that justifies treating two otherwise identical individuals differently. The second point I wanted to make, I'm sorry, Your Honor. No, no, go ahead. The second point I wanted to make, Your Honor, is that I think the premise of the question is that Congress actually made a judgment that individuals who possess a small amount of marijuana for personal use should be expelled from this country. And there's two problems with that. First, Congress actually made the opposite judgment. Congress made the express judgment that such individuals, such LPRs, do not pose a threat to this country. The second problem with that is that this is a fundamentally irrational way to go about achieving that strategy. The biggest impact of this policy is to take individuals who are convicted of such offenses and get them to stay in the country because if those individuals leave the country, they lose their status. And so this is a totally incoherent way to achieve the goal. If your goal, if Congress's goal was to expel minor marijuana offenders from the United States, this would be a crazy way to go about trying to achieve that goal. And what that indicates is that, in fact, just as the history, the decades-old judgment on deportability shows, that's just not Congress's judgment that such individuals pose that threat. Thank you, Your Honor. Thank you. Thank you both. We'll reserve decision.